United States District Court
District of Massachusetts

| | |
|---|---|
| United States of America, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action No. |
| ) | 19-10080-NMG |
| Sidoo et al, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM & ORDER**

GORTON, J.

The government has charged defendants with conspiring with William "Rick" Singer ("Singer") to have their children fraudulently admitted to elite universities by, inter alia, fabricating applications, falsifying academic and athletic credentials, cheating on standardized tests, making payments to corrupt exam proctors and bribing university employees and athletic coaches.

The defendants have moved to suppress evidence derived from four wiretaps that allegedly took place outside of the territorial jurisdiction of this Court and which were authorized without the government having demonstrated their necessity (Docket Nos. 1015 and 1024).  In the alternative, defendants

request a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978).

I.   **Facts**

The facts of this case have been broadly recited in prior orders of this Court, see Docket Nos. 1169 and 1334, but relevant here is the following:

On June 5, 2018, United States District Judge Alison D. Burroughs granted the first wiretap of Singer's telephone for a period of 30 days.  The affidavit and order stated that the "listening post" for the wiretap would be in Massachusetts.  It also indicated that Singer was a resident of California, as were many of the identified target subjects of the investigation. Other targets were identified as living elsewhere in the United States and abroad.  The order provided that if Singer's telephone was "used outside the territorial jurisdiction of this Court," interception could continue in Massachusetts, where the communications were being "monitored."  Docket Nos. 1015-16.

The affidavit also described the history of the investigation, including that: (1) two individuals were cooperating with agents, (2) the cooperators had made consensually recorded phone calls to Singer and (3) agents had obtained 30 gigabytes of Singer's emails pursuant to a search warrant which agents had just begun to review.  The affidavit explained that such investigative techniques were insufficient

- 2 -

to obtain evidence regarding the full scope of Singer's operation.  It noted that agents had considered but found insufficient: (1) use of an undercover agent, (2) further use of the cooperating defendants, (3) further grand jury subpoenas, or (4) an exhaustive review of Singer's emails.

On July 3, 2018, Judge Burroughs extended the interception of Singer's telephone and authorized the interception of two email accounts: rickwsinger@gmail.com and rwsinger@gmail.com. Her order was based on a 75-page affidavit that incorporated the June 5, 2018, affidavit by reference.  The second affidavit and order describe the importance of the evidence gathered from the wiretap thus far in proving that parents and Singer were involved in bribery.  It acknowledged that agents had access to Singer's emails but noted that real-time interception of Singer's telephone calls was essential in obtaining proof of Singer's intent.

On August 2, 2018, the Court authorized the continued interception of Singer's telephone and primary email account, rickwsinger@gmail.com, based on an 85-page affidavit that incorporated both prior affidavits by reference.  This third affidavit contained transcripts of some of Singer's intercepted calls and reiterated the importance of real-time interceptions of telephone calls in developing evidence of defendants' intent.

Finally, on August 30, 2018, the Court granted continued interception of Singer's telephone and email account based upon a 105-page affidavit.  That fourth affidavit described the other investigative techniques that agents were utilizing such as working with cooperators, executing email search warrants and pursuing a financial investigation.  It reiterated that only real-time interception of telephone calls would provide proof beyond a reasonable doubt of the crimes under investigation.

## II.  Discussion

### A. Territorial Jurisdiction

#### i. Legal Standard

Chapter 119 of Title III of the Omnibus Crime Control and Safe Streets Act ("Title III"), 18 U.S.C. §§ 2510-2521 sets forth the procedures for obtaining federal authorization of wiretapping and other forms of electronic surveillance.  Section 2518(3) provides that a judge may enter an order "approving interception of wire, oral, or electronic communications within the territorial jurisdiction of the court in which the judge is sitting. . . "

The defendants contend that the interception of calls to and from a California cell phone that never was physically present in this district or used to place a call to a phone in this district (excluding calls initiated by the government

through cooperators) did not occur within the "territorial jurisdiction" of this Court, as required by § 2518(3). As a result, they argue, all evidence derived from the wiretaps must be suppressed. Furthermore, defendants aver that the wiretap applications omitted material information (and included misleading information) that misrepresented the connection between any ongoing criminal conspiracy and the District of Massachusetts.

### ii. Analysis

The defendants argue that the "listening post" theory of jurisdiction, i.e. that an interception occurs either where the phone is located or where the "listening post" is located, is ill-conceived and urge this Court to depart from nearly 30 years of precedent.

The listening post theory was well explained by the Southern District of New York in United States v. Rodriguez, 734 F. Supp. 116, 120 (S.D.N.Y. 1990), aff'd, 968 F.2d 130 (2d Cir. 1992):

> The answer [of where the interception occurred] is given by the definition of "intercept" in the statute: Section 2510(4) defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device". The case law interprets the term "aural acquisition" to mean where the communication is actually heard or where it is recorded.

Id.

The government explains and the Court agrees that every appellate court to consider the issue has held that the interception occurs either where the phone is located or where the "listening post" is located. See id.; United States v. Cano-Flores, 796 F.3d 83, 87 (D.C. Cir. 2015); United States v. Henley, 766 F.3d 893, 911-12 (8th Cir. 2014); United States v. Luong, 471 F.3d 1107, 1109-10 (9th Cir. 2006); United States v. Jackson, 207 F.3d 910, 914-15 (7th Cir. 2000), vacated on other grounds, 531 U.S. 953 (2000); United States v. Denman, 100 F.3d 399, 402-03 (5th Cir. 1996); see also United States v. Jackson, 849 F.3d 540, 552 (3d Cir. 2017) (interceptions occurred at location of "listening post" under Pennsylvania statute modeled after Title III); United States v. Tavarez, 40 F.3d 1136, 1138 (10th Cir. 1994) (same, Oklahoma statute).  This Court sees no reason to deviate from prevailing precedent.  Moreover, in the current age of cell phones, requiring agents to obtain wiretaps for every district wherein a cell phone might be used would be "unworkable." Cano-Flores, 796 F.3d at 87.

Here, the investigation into Singer's alleged scheme was based in Massachusetts, therefore the listening post was in Massachusetts.  Because the interceptions were made in Massachusetts where the listening post was based, they occurred within the territorial jurisdiction of this Court as required by Title III § 2518(3).

Furthermore, the wiretap affidavits clearly indicated that many of the targets were located outside of the Commonwealth, in California and beyond.  They also described the events that transpired within Massachusetts, such as meetings, phone calls and a wire transfer.  These facts are not in dispute.  Thus, the affidavits were not misleading nor did they omit material facts regarding the Court's jurisdiction.

Accordingly, defendants' motion to suppress the communications derived from the four wiretaps for lack of territorial jurisdiction will be denied.

### B. Necessity

#### i. Legal Standard

Before authorizing the interception of wire communications pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1986 ("Title III"), 18 U.S.C. § 2518(1)(c), a court must make a finding of necessity. See 18 U.S.C. § 2518; United States v. Santana, 342 F.3d 60, 65 (1st Cir. 2003). Title III requires that a wiretap application include

> a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

18 U.S.C. § 2518(1)(c).  To satisfy that requirement the government must make a "reasonable, good faith effort to run the gamut of normal investigative procedures before resorting to

means so intrusive as electronic interception of telephone calls." United States v. Hoffman, 832 F.2d 1299, 1306-07 (1st Cir. 1987).  A reviewing court must uphold a wiretap if "the facts [in the affidavit] are reasonably adequate to support the issuing judge's implicit determination that other procedures reasonably appear to be unlikely to succeed." United States v. Ashley, 876 F.2d 1069, 1074 (1st Cir. 1989).

The defendants contend that the wiretaps here were not supported by a showing of necessity.  Consequently, they argue, evidence elicited pursuant to those wiretaps and all derivative evidence must be suppressed.

### ii. Analysis

The defendants submit that the wiretap affidavits failed to meet the necessity requirement because (1) they failed to establish that a wiretap was necessary and (2) they misrepresented or omitted material facts in order to persuade the Court that evidence sought by investigators could not be obtained through less intrusive means.

The defendants' primary argument is that normal investigative techniques were yielding results and therefore to wiretap Singer's phone was premature.  They contend that (1) the government had access to over 30 gigabytes of Singer's emails pursuant to a search warrant which they had only begun to review before applying for the wiretap, (2) the government was already

working with two cooperators, and (3) the government had obtained valuable bank records.  The defendants suggest that such success with normal investigative techniques only two months into the investigation meant that the government could not show that "it ha[d] encountered difficulties in penetrating a criminal enterprise or in gathering evidence". United States v. Abou-Saada, 785 F.2d 1, 11 (1st Cir. 1986).

The "full and complete statement" requirement of § 2518(1)(c) does not require officers to include every detail of an investigation, even if such details are relevant. United States v. Cartagena, 593 F.3d 104, 110 (1st Cir. 2010). Furthermore, "[t]here is no rule on the amount of time investigators must try and fail, using other methods, before turning to a wiretap application." United States v. Nelson-Rodríguez, 319 F.3d 12, 33 (1st Cir. 2003).  Even if traditional investigative procedures produce some results, "the partial success of the investigation [does] not mean that there [is] nothing more to be done." United States v. Cao, 471 F.3d 1, 3 (1st Cir. 2006) (emphasis omitted).

Here, the affidavits that were submitted with the June 5, 2018, application and thereafter demonstrate that the government had made a good-faith effort to use other investigative techniques and that there was a reasonable likelihood that alternative techniques would be insufficient.  Although the

government had gained some information from traditional
techniques, the affidavits made clear that there was still much
to be done beyond conventional methods.  The affidavits explain
in detail how and why other normal investigative techniques were
either exhausted or not feasible.

For example, the government had acquired some evidence that
defendants had made payments that resembled bribes, but it had
not obtained, nor could it, proof beyond a reasonable doubt as
to defendants' intent to make bribes.  There was also no
reasonable prospect that traditional investigative methods would
expose the full scope and membership of the conspiracy.  Such
detail and reasoning are sufficient to meet the necessity
requirement. See United States v. Martinez, 452 F.3d 1, 5 (1st
Cir. 2006); see also United States v. Rivera-Rosario, 300 F.3d
1, 19 (1st Cir. 2002).

The defendants contend in their supporting memorandum that
the agents showed a

> reckless disregard for the truth [by] dismissing the value
> of vast amounts of evidence it had obtained through
> traditional techniques but not yet reviewed [and failing]
> to discover information in its possession that would
> contradict a finding of necessity.

Docket No. 1025 at 21. However, the affidavits made clear what
evidence the government had obtained, its probative value and
why additional methods were required.  Simply because the

defendants disagree with the agents' conclusion regarding necessity does not render the affidavits fatally flawed.

Accordingly, defendants' motion to suppress the communications derived from the four wiretaps for failure to show necessity will be denied.

### C. Franks Hearing

In the event that their Motions to Suppress are denied, defendants request, in the alternative, a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978) to challenge the veracity and completeness of statements made in the affidavits supporting the four wiretap applications.

#### i. Legal Standard

The defendants argue that they are entitled to an evidentiary hearing so that their allegations of alleged omissions and false statements in the wiretap affidavits may be evaluated.  To warrant such an evidentiary hearing, defendants must make

> a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the allegedly false statement is necessary to the finding of probable cause.

Franks, 438 U.S. at 155-56.  Provided the defendants make the requisite showing, a Franks hearing may be held to address allegations of material omissions as well as false statements. Nelson-Rodríguez, 319 F.3d at 34.

### ii. Analysis

Defendants contend that they are entitled to a <u>Franks</u> hearing to determine whether the government made material misrepresentations in its affidavits with respect to the lack of any connection between Singer's suspected illegal activity and the District of Massachusetts.

As discussed above, defendants have not made a substantial preliminary showing that the affidavits omitted material facts knowingly and intentionally, or with reckless disregard for the truth, that would have altered the assessment by the issuing court. <u>See</u>, <u>e.g.</u>, <u>Franks</u>, 438 U.S. at 155-56; <u>Nelson-Rodriguez</u>, 319 F.3d at 34; <u>Cartagena</u>, 593 F.3d at 112; <u>Rivera-Rosario</u>, 300 F.3d at 20.  None of the omitted facts would have been material to the probable cause finding.  Accordingly, the request for a <u>Franks</u> hearing will be denied.

### D. Failure to Seal

#### i. Legal Standard

Under 18 U.S.C. § 2518(8)(a) recordings obtained pursuant to a Title III wiretap must be sealed "immediately" upon the expiration of the period of the wiretap order, or any extensions thereof.

> The term "immediately" means that the tapes should be sealed either as soon as practical after the surveillance ends or as soon as practical after the final extension order expires.

United States v. Rodrigues, 850 F.3d 1, 11 (1st Cir. 2017)

(quoting United States v. Coney, 407 F.3d 871, 873 (7th Cir.

2005)).   Section 2518(8)(a) provides further that "[t]he

presence of the seal provided for by this subsection, or a

satisfactory explanation for the absence thereof," is a

prerequisite to the admissibility of evidence procured pursuant

to a wiretap order.

The defendants submit that the wiretaps were not timely

sealed and therefore any evidence derived from them must be

suppressed.

### ii. Analysis

The final phone wiretap extension ended at midnight on

Friday, September 28, 2018, and the voice interceptions were

sealed on Tuesday, October 2, 2018, two business days later.

The final email wiretap of rwsinger@gmail.com ended on August 2,

2018, and the emails were sealed on August 6, 2018, two business

days thereafter.   The final email wiretap of

rickwsinger@gmail.com ended on September 28, 2018, and the

emails were sealed on October 3, 2018, three business days

later.

In determining whether the government violated

§ 2518(8)(a), the Court must consider, inter alia: (1) whether,

by clear and convincing evidence, the government has established

that the integrity of the tapes has not been compromised; and,

by a fair preponderance of the evidence, (2) whether the
government has demonstrated that the delay in presenting the
tapes for judicial sealing came about in good faith, which
requires a showing that the defendant was not prejudiced by the
delay and that the government did not benefit unfairly from the
lack of immediacy; (3) the length and frequency of any
particular delay; and (4) the cause of the delay. Rodrigues, 850
F.3d at 11.

Here, there is no indication that the integrity of the
tapes has been compromised or tampered with in any way.
Furthermore, "[w]hile the burden of proof is on the government,
this does not mean the government must prove a negative" when
the defendants do not allege tampering. United States v. Burgos-
Montes, 786 F.3d 92, 104 (1st Cir. 2015). The defendants do not
aver bad faith on the part of the government, nor is there
evidence of any prejudice to the defendants or unfair benefit to
the government as a result of the delay in sealing. Finally, a
delay of two or three business days is not unreasonable, per se.
See Rodrigues, 850 F.3d at 12. Although the government has not
explained why it did not file for sealing until two or three
business days after the expiration of the wiretaps, there is no
indication of "gross dereliction of duty or wilful disregard for
the sensitive nature of the activities undertaken by means of

- 14 -

the order[s]." United States v. Mora, 821 F.2d 860, 869 (1st Cir. 1987).

Accordingly, defendants' motion to suppress the communications derived from the four wiretaps for failure to seal will be denied.

### III. Order

In accordance with the foregoing, motions of the defendants (1) to Suppress Title III Interceptions (Docket No. 1015), (2) to Suppress Evidence Derived from Four Wiretaps (Docket No. 1024) and (3) for a Franks Hearing (Docket Nos. 1015 and 1024) are **DENIED**.

So ordered.

_____
Nathaniel M. Gorton
United States District Judge

Dated June 24, 2020