# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:19-cr-10080-NMG |
| Plaintiff, | |
| vs. | |
| COLBURN, *et al.* | |
| Defendants. | |

## ASSENTED-TO MOTION TO CONTINUE JANUARY 2021 TRIAL

Defendants I-Hsin "Joey" Chen, Amy Colburn, Gregory Colburn, Elisabeth Kimmel, William McGlashan, and Marci Palatella (the "Moving Defendants"), with the assent of the government, respectfully move to continue the January 11, 2021 trial in this matter until late April 2021, or as soon as is practicable thereafter in light of the COVID-19 pandemic. As grounds therefore, the Moving Defendants state as follows:

### I.      Procedural History

On February 27, 2020, this Court scheduled two jury trials in this action: the first to begin on October 5, 2020 (the "Group 1 Trial"), and the second to begin on January 11, 2021 (the "Group 2 Trial"). ECF No. 883. Four defendants (Gamal Abdelaziz, John Wilson, Homayoun Zadeh, and Robert Zangrillo) remain in the Group 1 Trial, and six defendants (the Moving Defendants) remain in the Group 2 Trial. On July 16, 2020, the government filed an assented-to motion to continue the Group 1 Trial from October 2020 to late February 2021. ECF No. 1395. On August 6, 2020, the Court granted the motion and rescheduled the Group 1 Trial to February 22, 2021. ECF No. 1454. Accordingly, the Group 2 Trial is scheduled to begin on January 11, 2021, and the Group 1 Trial is now scheduled to begin on February 22, 2021.

1

## II.     Trial Preparation During the COVID-19 Pandemic

With the Group 2 Trial set to begin in just three months, the parties must begin their witness and trial preparation now, but cannot do so safely under current conditions.  The current status of the COVID-19 pandemic makes these tasks exceedingly difficult, and, in many respects, inadequate.  All parties are handicapped in their preparation by the social distancing measures and travel restrictions in place due to COVID-19, and will continue to be for the foreseeable future until there is a material change in the threat posed by COVID-19 nationwide.

As the government explained in its July 16, 2020 motion to continue the Group 1 Trial, the vast majority of the potential witnesses in this case reside in California, Texas, and Georgia, states where there has been a significant surge in cases of COVID-19.  ECF No. 1395 at 2.  From the government's perspective, in addition to live witness testimony, the evidence in this case consists largely of documents and recordings.  *Id.*  Thus, in order to adequately prepare witnesses for both direct and cross-examination, it is necessary to meet with them in person.  *Id.*  This will require air travel by the witnesses and/or attorneys and other representatives of the government, and potentially weeks of quarantine upon arrival or return, or both.  *Id.*  Witness preparation, therefore, will be exceedingly difficult and is likely to create safety concerns for individuals involved, some of whom are particularly susceptible to COVID-19.  *Id.*

The challenges that COVID-19 presents for trial preparation are also felt acutely by the defendants, who have a constitutional right to counsel of their choosing and to participate in the preparation of their defense.  *See Luis v. United States*, 136 S. Ct. 1083, 1089 (2016) ("the Sixth Amendment grants a defendant 'a fair opportunity to secure counsel of his own choice,'" meaning that a defendant has the "right to be represented by a qualified attorney whom she chooses and can afford" (quoting *Powell v. Alabama*, 297 U.S. 45, 53 (1932))); *Owens v. United States,* 483

F.3d 48, 58 (1st Cir. 2007) (a defendant "has a 'fundamental constitutional' right to testify in his own defense, and … the right must be 'unfettered'" (quoting *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987), and *Harris v. New York*, 401 U.S. 222, 230 (1971))); *see also, e.g.*, *United States v. Rankin*, 779 F.2d 956, 961 (3d Cir. 1986) (reversing the defendant's conviction and granting a new trial because the defendant was deprived of the ability to be represented by counsel of choice by court's failure to grant continuance of trial date).  For all the reasons cited by the government in its earlier motion to continue, see ECF No. 1395 at 2, and for the additional reasons of the need for intensive, comprehensive, and highly confidential trial preparation for the defendants, in-person trial preparation for the defendants and the witnesses they intend to call is necessary, and is substantially impeded by the ongoing COVID-19 pandemic.

The defendants in the Group 2 Trial all reside in California or Nevada, and all except for Mr. Chen and Mr. McGlashan have trial counsel based in Boston.  In-person trial preparation involving the defendants necessarily requires cross-country travel and risks COVID-19 exposure for both the attorneys, their staff, the defendants, and all of their families, as a result of transit. Travel between California/Nevada and Massachusetts is strongly discouraged.  Under the Commonwealth of Massachusetts' COVID-19 Travel Order, "Massachusetts residents are urged to limit any out-of-State travel only to States designated as COVID-19 lower-risk States."[1] California and Nevada are not designated lower-risk States and have not been since this travel mitigation strategy was adopted by the Commonwealth on August 1, 2020.  Anyone entering Massachusetts from California or Nevada must quarantine for 14 days from the date of arrival in Massachusetts unless they meet certain criteria.[2]

---

[1] *See COVID-19 Travel Order*, MASS.GOV, https://www.mass.gov/info-details/covid-19-travel-order (last accessed Oct. 6, 2020).

[2] *See id.*

3

In California, all residents "are currently ordered to stay home or at their place of residence, except for permitted work, local shopping or other permitted errands, or as otherwise authorized."[3]   The recently issued and revised Blueprint for a Safer Economy in California designates each county in the state as having a Minimal, Moderate, Substantial, or Widespread COVID-19 transmission risk, and sets the guidelines for business operations based on each county's status.[4]   As of October 6, 2020, Los Angeles and San Bernardino Counties are categorized as "Widespread," requiring continued closure of non-essential indoor business operations, and Ventura, Santa Clara, San Diego, Orange, and Riverside Counties are categorized as "Substantial."

In Nevada, the COVID-19 positivity rate has soared.  As of September 10, 2020, Nevada had a daily positivity rate of 10.7%, well above the World Health Organization's target of a 5% test positivity rate.[5]   According to the governor's guidance, "[a]ll Nevadans are strongly encouraged to stay in their residences to the greatest extent possible," and "are urged to avoid travel to the greatest extent practicable."[6]

---

[3] *See Stay Home Q&A*, COVID19.CA.GOV, https://covid19.ca.gov/stay-home-except-for-essential-needs/#:~:text=All%20individuals%20living%20in%20the,the%20Questions%20%26%20Answers%20below) (last updated Oct. 2, 2020; last accessed Oct. 6, 2020).

[4] *See Blueprint for a Safer Economy*, COVID19.CA.GOV, https://covid19.ca.gov/safer-economy/ (last accessed Oct. 6, 2020).

[5] *See Declaration of Emergency Directive 032*, STATE OF NEVADA (Sept. 11, 2020), https://gov.nv.gov/News/Emergency_Orders/2020/2020-09-11_-_COVID-19_Declaration_of_Emergency_Directive_032/.

[6] *See Declaration of Emergency Directive 021, Phase Two Reopening Plan*, at § 8, STATE OF NEVADA (May 28, 2020), https://nvhealthresponse.nv.gov/wp-content/uploads/2020/05/Directive-021-Phase-Two-Reopening-Plan.pdf; *see also Declaration of Emergency Directive 33*, at § 1, STATE OF NEVADA (Sept. 30, 2020), https://gov.nv.gov/News/Emergency_Orders/2020/2020-09-30_-_COVID-19_Declaration_of_Emergency_Directive_033_(Attachments)/ (providing that any provisions not addressed by the latest Directive "shall remain in force as provided by previous Directives," and declining to terminate Section 8 of Directive 021); *Declaration of Emergency Directive 034*, at § 1, STATE OF NEVADA (Oct. 2, 2020), https://gov.nv.gov/News/Emergency_Orders/2020/2020-10-08_-_COVID-19_Emergency_Declaration_Directive_034_(Attachments)/ (same).

As this state-issued guidance illustrates, travel to Massachusetts is discouraged for California and Nevada residents, and travel to California and Nevada is ill-advised for Massachusetts residents. These circumstances substantially interfere with the defendants' ability to prepare for trial with counsel of their choosing. With respect to the defense's preparation of witnesses, some of whom are located in states other than California and Massachusetts, such preparation is similarly impeded by the pandemic. Indeed, some witnesses, regardless of travel circumstances, are reluctant or unwilling to meet with attorneys at all because of the potential exposure risks.

Even leaving aside the travel restrictions that make in-person preparation exceedingly difficult due to the geographic diversity of the trial participants, many of the defendants and attorneys have health concerns that make trial preparation, regardless of the geography, risky for themselves or members of their household.[7] Many risk categories for COVID-19 are invisible to the outside observer and highly personal: heart disease, diabetes, chronic obstructive pulmonary disease, cancer, asthma, liver and kidney disease, pregnancy, neurologic conditions, or another immunocompromised state.[8] The logistics of in-person preparation—long conversations with multiple participants, and binders of highly confidential documents or an electronic setup with a shared screen for viewing—require lengthy discussions in an enclosed space with people outside of one's household. The CDC and myriad departments of health have advised against such gatherings because of the high risk of COVID-19 transmission for everyone, and not just those at

---

[7] Due to the sensitive nature of these health concerns, the Moving Defendants will seek leave to file declarations in support of this motion under seal to provide the Court with additional information.

[8] *See, e.g.*, Coronavirus Disease 2019 (COVID-19), People at Increased Risk, CDC.GOV, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last accessed Oct. 6, 2020); *Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions*, CDC.GOV https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last accessed Oct. 6, 2020).

higher risk of serious infection.[9]   Under these circumstances, both the government's and the Moving Defendants' trial preparation is substantially impeded and would be prejudiced by a January 2021 trial date.

### III.   The Court's Capacity for Multi-defendant Trials and the Challenges of Jury Selection and Witness Attendance

In addition, it appears unlikely that a high-profile, six-defendant trial—which is projected to last four to six weeks (see ECF No. 1395 at 2)—will be feasible on January 11, 2021.  Based upon the most recent report to the bar by Chief Judge Saylor on September 16, 2020, the public nature and size of the Group 2 Trial present logistical challenges for which no solution has yet been devised under the current COVID-19 circumstances.

Given the high-profile nature of the trial, it is unclear whether and how the Court could safely accommodate a jury venire large enough to ensure the selection of a trial jury with sufficient alternates.  *See* ECF No. 1395 at 2.  As explained during Chief Judge Saylor's report to the bar, potential jurors will complete questionnaires that ask about a wide range of COVID-19 comorbidities, including very common comorbidities such as age and obesity.  It will also ask about potential jurors' living arrangements.  During the voir dire process, according to Chief Judge Saylor, jurors may be excused due to a lack of childcare, among other reasons.  This problem and others that may warrant excusal from jury service, such as prolonged economic hardship, primarily afflict specific demographics that could be uniformly excluded from the jury

---

[9] COVID-19 spreads person-to-person primarily through respiratory droplets.  Social distancing is important because someone who is sick with COVID-19 can spread COVID-19 as much as 48 hours before they have symptoms.  *See Frequently Asked Questions About COVID-19, "How Does COVID19 Spread?",* MASS.GOV, https://www.mass.gov/info-details/frequently-asked-questions-about-covid-19#how-does-covid19-spread? (last accessed Oct. 6, 2020).  According to the CDC, "[i]n general, the more people you interact with, the more closely you interact with them, and the longer that interaction, the higher your risk of getting and spreading COVID-19."  *See People with Certain Medical Conditions*, CDC.GOV, *supra* (emphasis removed).  The CDC classifies as "higher risk" and "highest risk" the type of gatherings that trial preparation would require: medium-sized in-person gatherings that include attendees who have traveled from outside the local area.  *See id.*

pool throughout the COVID-19 crisis.[10]  Other juror demographic segments—such as older jurors and jurors working in healthcare—may similarly be universally excluded as a result of precautions that exist only because of the ongoing global pandemic.  Still other juror demographic segments may self-exclude by not showing up for jury duty because of economic hardships or health and safety concerns.[11]  Experts predict that women, racial and ethnic minorities, and individuals over the age of 50 will be less likely to report for jury duty or to be empaneled.[12]  Despite careful efforts to obtain a jury pool that represents a fair cross-section of the community, such a cross-section may be impossible to obtain under current conditions, and even if achievable, would take a substantial amount of time and physical space to evaluate.

The number of trial participants also presents unique challenges that, according to Chief Judge Saylor's most recent report to the bar, render such trials currently unfeasible in this District. At this time, indoor gatherings in Massachusetts are limited to 25 persons total in a single enclosed, indoor space.[13]  The District Court is limiting the number of individuals in the courtroom to one person per 100 square feet, resulting in a maximum of 24 participants in a trial in the largest courtrooms available in the Moakley Courthouse.[14]  For non-detained defendants, this permits at

---

[10] *See, e.g.*, Thomas F. Harrison, *Not Afraid of the Virus and Reporting for (Jury) Duty*, COURTHOUSE NEWS SERVICE (July 10, 2020), https://www.courthousenews.com/not-afraid-of-the-virus-and-reporting-for-jury-duty/.

[11] *See, e.g.*, *id.*; GBAO Memo. to Nat'l Center for State Courts, *Jury Trials in a (Post) Pandemic World – National Survey Analysis* (June 22, 2020), available at https://www.ncsc.org/__data/assets/pdf_file/0006/41001/NCSC-Juries-Post-Pandemic-World-Survey-Analysis.pdf (discussing survey results finding that "55 percent of potential jurors face at least one obstacle that makes it dangerous or logistically impossible for them to report for jury duty if summoned," and that "there are clear gender and age dynamics at play … that would have a direct impact on courts' ability to draw a representative jury pool").

[12] *See* Harrison, *supra* (noting that "the average juror is now more likely to be … a young, white man with a conspicuous distrust of science, large institutions and criminal defendants"); GBAO Memo., *supra* (noting that "[j]ust 41 percent of men under age 50 face one of the three obstacles identified above [a household member with an underlying medical condition; serving as a primary caregiver for an elderly adult; or unable to secure reliable childcare], but that number rises to 52 percent among women under 50, 57 percent among men ages 50+, and 65 percent among women ages 50+").

[13] *See Phase III, Step 2 Order Regulating Gatherings in the Commonwealth, COVID-19 Order No. 52*, COMMONWEALTH OF MASSACHUSETTS (Sept. 29, 2020), https://www.mass.gov/doc/governors-covid-19-order-52/download.

[14] *See COVID-19: Resuming Jury Trials In Massachusetts*, LEXOLOGY (Sept. 24, 2020), https://www.lexology.com/library/detail.aspx?g=39bb4016-f5f4-4b28-ad83-

most a two-defendant trial where each defendant is limited to only one attorney.  Leaving aside the constitutional concerns of limiting the defendants' choice of counsel in this manner, a trial of six defendants together is physically unfeasible absent a drastic change in the social distancing protocols required to minimize the spread of COVID-19.  Such a trial would require *at a minimum* 35 people in a single room: the judge, the courtroom deputy clerk, the stenographer, 1 prosecutor, the 6 defendants, 6 defense attorneys, 1 interpreter, 2 court security officers, 14 jurors, and 2 alternates.  This far exceeds the number currently permitted in an indoor space under the Massachusetts guidelines.[15]

Moreover, the restrictions on interstate travel requiring a two-week quarantine for individuals who enter Massachusetts make it difficult, if not impossible, to secure witness attendance, and will impede the orderly flow of a trial.  *See* ECF No. 1395 at 2-3.  Some witnesses may also have underlying health conditions that make them particularly vulnerable to severe complications from COVID-19, and may have legitimate concerns about entering the courthouse or other trial facility.  For all of these logistical reasons, it appears that the District Court will be unable to accommodate a trial of this size and complexity in January 2021.

### IV.   Predictions for January 2021 in Boston Suggest No Improvement in COVID-19 Transmission and Potential Worsening of the Infection Rate

Although it is difficult to predict the course of COVID-19, experts believe that the COVID-19 infection rate will be worse during the 2020-2021 winter, when substantial trial preparation and the Group 2 Trial are currently scheduled to occur.[16]  The director of the National

---

801c95073100#:~:text=On%20September%2016%2C%202020%2C%20Chief,during%20the%20COVID%2D19%20pandemic.

[15] Although Chief Judge Saylor informed the bar that the District Court is considering alternative spaces such as Hanscom Air Force Base for multi-defendant trials, the government has informed the Moving Defendants that as of October 6, 2020, it understands that trials will not, in fact, be taking place at Hanscom.

[16] *See, e.g.*, Megan Scudellari, *How the pandemic might play out in 2021 and beyond*, NATURE (Aug. 5, 2020), https://www.nature.com/articles/d41586-020-02278-5  (quoting Akiko Iwasaki, an immunobiologist at the Yale School of Medicine, and Richard Neher, a computational biologist at the University of Basel in Switzerland); Amir

Institute of Allergy and Infectious Diseases cautioned Americans during a panel discussion with Harvard Medical School doctors that "[w]e need to hunker down and get through this fall and winter because it's not going to be easy."[17]

Even under a conservative model that projects COVID-19 outcomes until January 25, 2021, assuming that the current interventions in Massachusetts stay exactly as they are now (on October 6, 2020), the infection rates for COVID-19 in the Commonwealth would look fairly similar to the current rates.[18]  Another model predicts that the daily infection and death rates in Massachusetts from COVID-19 will rise slightly or stay approximately the same between now and January 2021 if educational facilities and non-essential businesses remain closed and people are ordered to stay at home—conditions that are not in place in the Commonwealth right now.[19] Without these conditions, and with an anticipated gradual easing of social distancing mandates, the daily infection and death rates will increase dramatically in the Commonwealth between November 2020 and January 2021,[20] to say nothing of the rates in other states from which the defendants and witnesses would need to travel to prepare for and attend trial.

Vera, Jay Croft, and Christina Maxouris, *US could see a 'very deadly December' with tens of thousands of coronavirus death to come, computer model predicts,* CNN (Sept. 11, 2020, updated at 9:20pm ET), https://www.cnn.com/2020/09/11/health/us-coronavirus-friday/index.html (describing "an influential model" prepared by the Institute for Health Metrics and Evaluation (IHME) at the University of Washington predicting "a catastrophic winter with a significant rise in coronavirus deaths").
[17] *See* Lauren Booker, *Fauci says US should plan to 'hunker down' for fall and winter*, THE BOS. GLOBE (Sept. 11, 2020, updated at 8:02pm ET), https://www.bostonglobe.com/2020/09/11/nation/fauci-says-us-should-plan-hunker-down-fall-winter/.
[18] *See* COVID-19 Simulator, MGH INST. FOR TECH. ASSESSMENT, https://analytics-tools.shinyapps.io/covid19simulator06/ (last accessed Oct. 6, 2020) (COVID-19 policy simulator reported 188 new cases for COVID-19 on September 9, 2020, and predicted 196 new cases for COVID-19 on January 11, 2021, under current interventions).
[19] *See* COVID-19 Projections, INST. FOR HEALTH METRICS & EVALUATION (IHME), https://covid19.healthdata.org/united-states-of-america/massachusetts?view=social-distancing&tab=trend (last updated Oct. 2, 2020; last accessed Oct. 6, 2020); *see also COVID-19 model FAQs*, INST. FOR HEALTH METRICS & EVALUATION (IHME), http://www.healthdata.org/covid/faqs#Scenarios (last accessed Oct. 6, 2020).
[20] *See id.*

9

For these reasons, the Moving Defendants, with the assent of the government, seek a late April 2021 trial date, or a trial date sometime thereafter that is convenient to the Court and realistic in light of the limitations imposed by COVID-19.  Such a date should allow sufficient time to complete the Group 1 Trial scheduled for February 22, 2021, should that trial proceed at that time. The Moving Defendants also seek to amend the pretrial order deadlines set forth in ECF No. 1250 in accordance with the revised trial date, should the Court allow this Motion.

WHEREFORE, the Moving Defendants respectfully request that this Court continue the Group 2 Trial to late April 2021, and revise the corresponding pretrial order deadlines to comport with the new trial date.

DATED: October 6, 2020                     Respectfully submitted,


/s/ Reuben Camper Cahn                     /s/ Eóin P. Beirne
Reuben Camper Cahn (pro hac vice)          R. Robert Popeo (BBO # 403360)
Jennifer L. Keller (pro hac vice)          Mark E. Robinson (BBO # 423080)
Chase A. Scolnick (pro hac vice)           Eóin P. Beirne (BBO # 660885)
KELLER/ANDERLE LLP                         Cory S. Flashner (BBO # 629205)
18300 Von Karman Avenue, Suite 930         MINTZ, LEVIN, COHN, FERRIS,
Irvine, CA 92612                             GLOVSKY AND POPEO, P.C.
Tel: (949) 476-8700                        One Financial Center
rcahn@kelleranderle.com                    Boston, MA 02111
                                           (617) 348-1605 (telephone)
Counsel for I-Hsen "Joey" Chen             (617) 542-2241 (fax)
                                           rpopeo@mintz.com
                                           mrobinson@mintz.com
                                           ebeirne@mintz.com
                                           csflashner@mintz.com

                                           Counsel for Elisabeth Kimmel

_/s/ David S. Schumacher_
David S. Schumacher (BBO #647917)
HOOPER, LUNDY & BOOKMAN, P.C.
470 Atlantic Avenue, Suite 1201
Boston, MA 02210
(617) 532-2700
(617) 345-3927 (fax)
dschumacher@health-law.com

Patric Hooper (_pro hac vice_)
HOOPER, LUNDY & BOOKMAN, P.C.
1875 Century Park East, Suite 1600
Los Angeles, California 90067-2517
(310) 551-8111
(310) 551-8181 (fax)
phooper@health-law.com

Jordan Kearney (_pro hac vice_)
HOOPER, LUNDY & BOOKMAN, P.C.
575 Market Street, Suite 2300
San Francisco, CA 94105
(415) 875-8500
(415) 875-8519 (fax)
jkearney@health-law.com

_Counsel for Amy and Gregory Colburn_

_/s/ Jack W. Pirozzolo_
Jack W. Pirozzolo (BBO # 564879)
jpirozzolo@sidley.com
SIDLEY AUSTIN LLP
60 State Street, 36th Floor
Boston, MA 02109
(617) 223-0304

John C. Hueston (_pro hac vice_)
jhueston@hueston.com
Marshall Camp (_pro hac vice_)
mcamp@hueston.com
HUESTON HENNIGAN LLP
523 W. 6th Street, Suite 400
Los Angeles, CA 90014
(213) 788-4340

_Counsel for William McGlashan, Jr._

_/s/ Michael K. Loucks_
Michael K. Loucks (BBO #305520)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
500 Boylston Street
Boston, MA 02116
(617) 573-4800
michael.loucks@skadden.com

Jack P. DiCanio (_pro hac vice_)
Allen J. Ruby (_pro hac vice_)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, CA 94301
(650) 470-4500
jack.dicanio@skadden.com
allen.ruby@skadden.com

_Counsel for Defendant Marci Palatella_

## RULE 7.1 CERTIFICATION

Undersigned counsel certifies that, on October 6, 2020, he conferred with counsel for the government, and the government assents to this Motion.

## CERTIFICATE OF SERVICE

I, Eóin P. Beirne, counsel for the Defendant, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF, and paper copies will be sent to those indicated as non-registered participants on October 6, 2020.

/s/ *Eóin P. Beirne*
Eóin P. Beirne (BBO # 660885)