UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : Criminal Action |
| | No. 19-cr-10080-NMG |
| v. | : |
| AMY COLBURN *et al.*, | : |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**GREGORY COLBURN [DEF. NO. 2], AMY COLBURN [DEF. NO. 3],
I-HSIN CHEN [DEF. NO. 7], ELISABETH KIMMEL[DEF. NO. 13],
AND MARCI PALATELLA [DEF. NO. 16]
MOTION TO CONTINUE APRIL 2021 TRIAL**

Defendants Gregory Colburn [Def. No. 2], Amy Colburn [Def. No. 3], I-Hsin Chen [Def. No. 7], Elisabeth Kimmel [Def. No. 13], and Marci Palatella [Def. No. 16] (the "Moving Defendants")[1] respectfully move this Court to continue the April 20, 2021 trial until a date and time convenient to the Court, after the "Group 1 Trial" already set for September 2021. As explained below, the Moving Defendants expect that this new trial date will be a firm and final trial date at a time by which the majority of COVID-19 concerns should have subsided. The Moving Defendants respectfully submit that if the trial were to be held in the fall of 2021, it will be delayed less than a year from its original start date of January 2021. A continuance of this length is reasonable given the severity of the ongoing global pandemic and the fact that all of the defendants in the April 2021 trial consent to such a continuance for their safety and the safety of all trial participants.

---

[1] William McGlashan, Jr. [Def. No. 15] is also included in the "Group 2" Trial. He does not oppose this motion.

**I.     PROCEDURAL HISTORY**

On February 27, 2020, the Court scheduled two jury trials in this matter.  The first trial was scheduled to begin on October 5, 2020 (the "Group 1 Trial") and the second on January 11, 2021 (the "Group 2 Trial").  (Dkt. 883.)  On July 16, 2020, the government filed an assented-to motion to continue the Group 1 Trial from October 2020 to late February 2021. (Dkt. 1395.)  On August 6, 2020, the Court granted that motion, and rescheduled the Group 1 Trial to February 22, 2021.  (Dkt. 1454.)  On October 6, 2020, the Group 2 Trial defendants filed an assented-to motion to continue their trial from January to late April 2021. (Dkt. 1512.)  On October 19, 2020, the Court granted that motion, and rescheduled the Group 2 Trial to April 20, 2021.  (Dkt. 1536.)  On November 20, 2020, the Group 1 Trial defendants filed an assented-to motion to continue the Group 1 Trial again to September 2021, or, in the alternative, June 2021. (Dkt. No. 1634.)  The Court asked the defendants for additional information in connection with this motion, which the parties provided.  (*See* Dkt. Nos. 1648, 1659.)  The Court granted that motion, and rescheduled the Group 1 Trial to September 13, 2021.  (Dkt. No. 1679.)

Thus, as of now, the Group 1 Trial is scheduled to begin on September 13, 2021, and the Group 2 Trial is scheduled to begin on April 20, 2021.

**II.    IT IS NOT FEASIBLE TO PREPARE ADEQUATELY FOR TRIAL AT THIS STAGE OF THE COVID-19 PANDEMIC.**

Each of the reasons justifying a continuance of this matter has been fully set forth by the government and Group 1 Trial defendants in moving to continue the now-vacated January trial— and each has been considered and evaluated by this Court in granting that motion.  As discussed below, the urgency of the concerns that justified making and granting that motion has only increased with the still worsening public health emergency.  The rate of infection and number of deaths caused by COVID-19 have increased.  A new and more transmissible genetic variant of

2

the virus has been detected in the United States and threatens to increase exponentially spread of the disease.  The initial roll out of vaccines which promise to abate the pandemic has been far slower than expected.  Given this, a continuance of the currently scheduled April trial date is supported by more urgent justification than was postponement of the Group 1 Trial.

The Group 2 Trial is scheduled to begin in three months.  Under the current scheduling order, the Group 2 Trial government expert disclosures were due on January 15, 2021 (the government did not serve any such disclosures), reciprocal discovery was due on January 25, 2021, the government's exhibit list is due on February 5, 2021, and defense expert disclosures are due on February 15, 2021.  (Dkt. No. 1536.)  Defense counsel and the government must begin meeting with and preparing witnesses in the coming weeks.

At this time, the in-person work that is required to sufficiently prepare for trial cannot be done safely.  Almost all of the witnesses in this case reside outside of the Commonwealth of Massachusetts.  The majority of the physical evidence consists of documents and recordings, the bulk of which are subject to a stringent protective order.  In order to prepare witnesses adequately, counsel will need to review these documents and recordings with the witnesses in person.  While counsel is diligently working as best they can to use remote means of preparing for trial, for the reasons set forth in response to this Court's questions to the Group 1 Trial defendants and the government, virtual preparation is not a sufficient substitute for in-person meetings.  (*See* Dkt. No. 1659.)  For the foreseeable future, the in-person meetings necessary to prepare for trial are impracticable and unsafe.

The defendants in the Group 2 Trial all reside in California or Nevada, and all except for Mr. Chen and Mr. McGlashan have trial counsel based in Boston.  As the government explained in its July 16, 2020, motion to continue the Group 1 Trial, the majority of witnesses who will be

called during trial reside in California, Texas, and Georgia.  (*See* Dkt. 1395.)  Defense counsel expect to call witnesses from California and Nevada, as well as Illinois, Rhode Island, New Hampshire, Hawaii, and the District of Columbia, and elsewhere.  Thus, in-person trial preparation necessarily requires cross-country travel and risks COVID-19 exposure for the attorneys, their staff, the defendants, and all of their families, as a result of transit.

Interstate travel is highly risky and strongly discouraged by countless state and local authorities.  Under the Commonwealth of Massachusetts' COVID-19 Travel Order, "Massachusetts residents are urged to limit any out-of-State travel only to States designated as COVID-19 lower-risk States."[2]  If anyone wants to travel to Massachusetts from a high risk state, the individual must either quarantine for 10 days or produce a negative COVID-19 test result that has been administered up to 72-hours prior to the person's arrival in Massachusetts.[3]

In California, residents are advised that "Californians should remain local (not traveling more than 120 miles from their home or other place of residence) and avoid non-essential travel."[4]  Individuals travelling to the Bay Area or the Los Angeles area, which have been devastated by the COVID-19 pandemic recently, must quarantine for ten days upon arrival, and there is no testing alternative.[5]  Moreover, even if Massachusetts counsel could travel to the Moving Defendants who live in California, hotels in the Bay Area and the Los Angeles area, where many of the potential witnesses and Moving Defendants reside, are unable to accept reservations unless "the traveler is using the lodging in connection with COVID-19 mitigation, containment, and treatment measures, as accommodation for essential workers or those displaced

---

[2]  *See* Mass.gov, Covid-19 Travel Order, https://www.mass.gov/info-details/covid-19-travel-order.  As of January 17, 2021, Hawaii is the only designated lower-risk state.
[3]  *Id.*
[4]  *See* CalAll,Travel, https://covid19.ca.gov/travel/
[5]  *See* SF.Gov, News, Mandatory travel quarantine, https://sf.gov/news/mandatory-travel-quarantine-due-major-surge-covid-19-cases; *see also* Appendix W; Mandatory Directive on Travel, http://publichealth.lacounty.gov/media/Coronavirus/docs/protocols/Directive_Travel.pdf.

by fire or other emergency, or for individuals or families who have no other primary residence (including individuals who would otherwise experience homelessness)."[6] Similarly, in Nevada, the state has issued guidance providing that "all Nevadans are strongly encouraged to stay in their residences to the greatest extent possible," and "are urged to avoid travel to the greatest extent practicable."[7]

These messages have been communicated on a national level as well. The CDC has advised that "Travel can increase your chance of spreading and getting COVID-19. Postponing travel and staying home is the best way to protect yourself and others from COVID-19."[8] Even with current airline precautions, recent research demonstrates that air travel is not safe, and passengers can contract COVID-19 during transit.[9]

Even if the parties could travel to each other safely, in-person meetings cannot be conducted safely, if at all. Since October 19, 2020—the date the Court granted the motion to continue the Group 2 Trial from January to April 2021—COVID-19 cases have skyrocketed in all relevant areas:

- On October 19, 2020, the average positivity rate in Massachusetts was 1.4%.[10] As of January 14, 2020, the average positivity rate has increased to 7.99%.[11]

---

[6] *Id.*; *see also* CalAll, Travel, https://covid19.ca.gov/travel/.

[7] *See* Declaration of Emergency Directive 021, Phase Two Reopening Plan, at § 8, STATE OF NEVADA (May 28, 2020), https://nvhealthresponse.nv.gov/wp-content/uploads/2020/05/Directive-021-Phase-Two-Reopening-Plan.pdf; *see also* Declaration of Emergency Directive 33, at § 1, STATE OF NEVADA (Sept. 30, 2020), https://nvhealthresponse.nv.gov/wp-content/uploads/2020/10/Declaration-of-Emergency-Directive-033.pdf (providing that any provisions not addressed by the latest Directive "shall remain in force as provided by previous Directives," and declining to terminate Section 8 of Directive 021); *see also* Declaration of Emergency Directive 034, at § 1, STATE OF NEVADA (Oct. 2, 2020), https://nvhealthresponse.nv.gov/wp-content/uploads/2020/10/Declaration-of-Emergency-Directive-034.pdf (same).

[8] *See* CDC, Covid-19, Travel during the pandemic, https://www.cdc.gov/coronavirus/2019-ncov/travelers/travel-during-covid19.html.

[9] *See* Benedict Carey, *One 18-Hour Flight, Four Coronavirus Infections*, N.Y. Times, Jan. 7, 2021, https://www.nytimes.com/2021/01/07/health/coronavirus-airline-passengers-outbreak.html.

[10] *See* Mass. Dep't of Public Health, Covid-19 Dashboard, https://www.mass.gov/doc/covid-19-dashboard-november-19-2020/download.

[11] *See* Mass. Dep't of Public Health, Covid-19 Dashboard, Weekly COVID-19 Pub. Health Rpt., https://www.mass.gov/doc/weekly-covid-19-public-health-report-january-14-2021/download.

- On October 19, 2020, the positivity rate in California was 2.6%.[12] As of January 17, 2021, the rate has increased to 12.5%.[13] According to California's Blueprint for a Safer Economy in California—which designates each county in the state as having a Minimal, Moderate, Substantial, or Widespread COVID-19 transmission risk— all counties in California, except for four rural counties, are currently categorized as "widespread"—the highest tier.[14]

- On October 19, 2020, the statewide positivity rate in Nevada was 8.9%.[15] As of January 17, 2021, the average positivity rate increased to 21.3%.[16]

The states where the majority of witnesses, defendants, and attorneys reside are experiencing extreme surges in COVID-19 cases that show no sign of abating.[17] The California Bay Area and Los Angeles area are both subject to a Regional Stay at Home Order—the most restrictive of California's orders—due to a shortage of ICU beds.[18] Moreover, a new, highly contagious, variant of the COVID-19 virus has been found in California and Massachusetts.[19] If the variant spreads here as rapidly as it did in the U.K., both California and Massachusetts should expect an exponential increase in confirmed COVID-19 cases, worsening an already horrific situation. Experts say this variant could be the dominant strain circulating in the United States by March.[20]

---

[12]  *See* CalAll, Tracking COVID-19 in Cal., https://covid19.ca.gov/state-dashboard/
[13]  *Id.*
[14]  *See* CalAll, Blueprint for a Safer Economy, https://covid19.ca.gov/safer-economy/.
[15]  *See* Nev. Health Response, COVID-19, https://nvhealthresponse.nv.gov/.
[16]  *Id.*
[17]  *See* Luke Money & Rong-Gong Lin II, *L.A. County approaching 1 million coronavirus cases as officials brace for new hospital surge*, L.A. Times, Jan. 12, 2021, https://www.latimes.com/california/story/2021-01-12/la-covid-cases-near-1-million-officials-expect-new-surge.
[18]  *See* CalAll, About COVID-19 restrictions, Regional Stay Home Order, https://covid19.ca.gov/stay-home-except-for-essential-needs/.
[19]  *See* Scott J. Croteau, *Highly contagious COVID variant detected in Massachusetts; Health officials say Boston woman became ill after traveling to UK*, MassLive, Jan. 17, 2021, https://www.masslive.com/coronavirus/2021/01/highly-contagious-covid-variant-detected-in-massachusetts-health-officials-say-boston-woman-became-ill-after-traveling-to-uk.html; *see also* Victoria Albert, *COVID-19 variant first reported in the U.K. detected in Southern California*, CBS News, Dec. 30, 2020, https://www.cbsnews.com/news/california-coronavirus-variant-uk-detected-southern-california /.
[20]  *See* Betsy McKay, *Covid-19 Strain Found in U.K. Likely to Become Dominant in U.S. in March, CDC Says*, Wall St. J., Jan. 15, 2021, https://www.wsj.com/articles/u-k-covid-19-variant-likely-to-become-dominant-u-s-strain-in-march-cdc-says-11610733600.

As the positivity rates increase, the risk of meeting in-person also increases.[21] The current rates of COVID-19 in California, Massachusetts, and Nevada, make the prospect of in-person meetings risky, and, in some areas, prohibited by local and state ordinances limiting in-person meetings to certain essential business. And the logistics of either quarantining for ten days after arriving in Massachusetts or obtaining a negative COVID-19 test 72 hours prior to any travel to Massachusetts is untenable in light of the number and frequency of meetings necessary to prepare for trial.[22] Because COVID-19 is spread primarily through respiratory droplets,[23] "the more people you interact with, the more closely you interact with them, and the longer that interaction, the higher your risk of getting and spreading COVID-19."[24] The types of gatherings necessary for trial preparation—frequent medium-sized in-person gatherings for multiple hours that include attendees who have traveled from outside of the local area—are exactly those types that the CDC classifies as "higher risk" and "highest risk" and those that state and local governments discourage or prohibit from occurring.

All of the risks associated with in-person meetings are especially concerning for those witnesses and attorneys who are more susceptible to complications associated with COVID-19. According to the CDC, older adults are at an increased risk for severe illness. Eight out of 10 COVID-19 deaths in the U.S. have been among adults aged 65 years or older.[25] The CDC has

---

[21] "A high percent positivity means there is a high rate of SARS-CoV-2 infections due to extensive transmission of the virus in the geographic area." *See* CDC, COVID-19, FAQ: Calculating Percent Positivity, What does a high percent positivity mean?, https://www.cdc.gov/coronavirus/2019-ncov/lab/resources/calculating-percent-positivity-faq.html.
[22] *See* Mass.gov, COVID-19 Travel Order, https://www.mass.gov/info-details/covid-19-travel-order.
[23] *See* Mass.gov, Frequently asked questions about COVID-19, How does Covid-19 spread?, https://www.mass.gov/info-details/frequently-asked-questions-about-covid-19#how-does-covid19-spread?
[24] *See* CDC, COVID-19, People with Certain Medical Conditions, Are you considering in-person visits with family and friends?, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html; *see also* CDC, Vaccines & Immunizations, Answering Patients questions, https://www.cdc.gov/vaccines/covid-19/hcp/answering-questions.html?; *see also* CDC, COVID-19, People at Increased Risk, Other People Who Need Extra Precautions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html.
[25] *See* CDC, COVID-19, Older Adults, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

also provided a list of common underlying conditions which may place individuals at an increased risk for severe illness from COVID-19, including but not limited to the following: heart conditions, obesity, pregnancy, asthma, hypertension, and diabetes.[26] Many witnesses and attorneys involved in this case fall within one or more of the categories placing them at an increased risk of experiencing severe complications from COVID-19.[27]

While there are now two vaccines approved for emergency use, the roll-out of these vaccines has been very slow. California, Massachusetts, and Nevada are bringing up the rear of an already slow nationwide roll-out.[28] Except for those individuals who fall into a heightened risk category due to age or preexisting conditions, many of the trial participants—including some of the Moving Defendants, some of their counsel, and some of the potential jurors—will not be eligible to receive the vaccine before the general public. Widespread availability of the vaccine will likely not be offered to the general public until, at the earliest, the spring of 2021. For example, Massachusetts anticipates the vaccine being made available to the general public *starting* in April 2021, though this says nothing about how long it will take to *finish* vaccinating everyone.[29]

---

precautions/older-adults.html.

[26] *See* CDC, COVID-19, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html; *see also* CDC, Vaccines & Immunizations, https://www.cdc.gov/vaccines/covid-19/hcp/answering-questions.html?; *see also* CDC, COVID-19, People at Increased Risk, Other People Who Need Extra Precautions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html.

[27] This Court asked the Group 1 Trial participants to identify how many people associated with this case are 65 years old or older. With respect to the Group 2 Trial, on the defense side, 2 defendants and 6 attorneys are 65 years of age or older. The Moving Defendants do not know how many witnesses are or reside with other adults over 65 years old, or with otherwise vulnerable family members. Several defendants and their counsel also have serious health conditions that place them at an increased risk for severe illness from COVID-19. The Moving Defendants respectfully requests that the Court refer to the declarations filed *ex parte* and under seal by the Moving Defendants in support of their prior Motion to Continue. (*See* Declarations filed pursuant to Dkt. No. 1513, 1514.) To the extent there is new information, the Moving Parties will seek leave to file affidavits in support of this motion *ex parte* and under seal due to the sensitive nature of these health concerns.

[28] *See How the Vaccine Rollout Is Going in Your State*, N.Y. Times, Jan. 20, 2021, https://www.nytimes.com/interactive/2020/us/covid-19-vaccine-doses.html.

[29] *See* Mass.gov, Coronavirus Updates and Information, When can I get the COVID-19 vaccine?, https://www.mass.gov/info-details/when-can-i-get-the-covid-19-vaccine.

Moreover, while the vaccine has been authorized for emergency use to protect the *recipient* from serious COVID-19 symptoms, it has not been proven effective to prevent the recipient from *spreading* COVID-19 nor for preventing asymptomatic illness.[30] Thus, it is not enough that some people in the courtroom are vaccinated—in order to have a safe, constitutional trial, all individuals present in the court and necessary for the trial and its preparation (including people such as support staff, other counsel not present in the courtroom, jurors, and the Moving Defendants' family members) must have an opportunity to be vaccinated prior to the trial starting. This, practically, will not happen before mid-2021, and certainly will not happen in the next few weeks when the parties will have to start trial preparation in earnest if an April trial is to occur.

Defendants have a constitutional right to participate in the preparation of their defense. *Luis v. United States*, 136 S. Ct. 1083, 1089 (2016) ("[T]he Sixth Amendment grants a defendant 'a fair opportunity to secure counsel of his own choice,'" meaning that a defendant has the "right to be represented by a qualified attorney whom she chooses and can afford" (*quoting Powell v. Alabama*, 297 U.S. 45, 53 (1932))); *Owens v. United States*, 483 F.3d 48, 58 (1st Cir. 2007) (a defendant "has a 'fundamental constitutional' right to testify in his own defense, and … the right must be 'unfettered'" (*quoting Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987), and *Harris v. New York*, 401 U.S. 222, 230 (1971))); *see also, e.g., United States v. Rankin*, 779 F.2d 956, 961 (3d Cir. 1986) (reversing the defendant's conviction and granting a new trial because the defendant was deprived of the ability to be represented by counsel of choice by court's failure to grant continuance of trial date). Under the current conditions, the Moving Defendants cannot feasibly

---

[30] *See* Joanne Silberner, *Why You Should Still Wear A Mask And Avoid Crowds After Getting The COVID-19 Vaccine*, NPR, Jan. 12, 2021, https://www.npr.org/sections/health-shots/2021/01/12/956051995/why-you-should-still-wear-a-mask-and-avoid-crowds-after-getting-the-covid-19-vac.

9

exercise their constitutional right to participate in their defense and prepare for trial.  Thus, the trial should be continued until such time where Defendants, their counsel, the government, and witnesses can travel freely and meet in person to sufficiently prepare for trial.

### III.     IT WILL BE NEARLY IMPOSSIBLE TO CONDUCT A MULTI-DEFENDANT TRIAL IN APRIL 2021.

In addition to the issues described above, a multi-defendant trial creates unique logistical challenges that may be impossible to meet in the near future.  According to current guidance, in order to ensure proper social distancing, a maximum of 23 people can safely be in the largest courtrooms available in the Moakley Courthouse.[31]  The Group 2 Trial would, at a minimum, require 41 people in a single courtroom: the judge, the courtroom deputy clerk, the stenographer, 2 prosecutors, the 6 defendants, 10 defense attorneys,[32] 2 paralegals (one defense/one government), 2 court security officers, 12 jurors and 2 alternates, 1 witness, and 1 translator (for Defendant Chen).  Thus, it would be impossible to accommodate this multi-defendant trial in a traditional courtroom.[33]  During a report to the bar on October 29, 2020, Chief Judge Saylor explained that the Court has made efforts to identify an alternative venue with proper security that is large enough to accommodate multi-defendant trials.  To date, no such venue is available.  Additionally, it will be extremely difficult if not impossible to safely accommodate the large jury venire that will be needed given the high-profile nature of this trial.  It is almost certain that the

---

[31]     *See* F. Ellsworth, A. Dulberg & J. Schlotter, *COVID-19: Resuming Jury Trials In Massachusetts*, LEXOLOGY, Sept. 24, 2020, https://www.lexology.com/library/detail.aspx?g=39bb4016-f5f4-4b28-ad83-801c95073100#:~:text=On%20September%2016%2C%202020%2C%20Chief,during%20the%20COVID%2D19%20pandemic.

[32]     The Colburns are represented by the same counsel and thus would only have two attorneys in the courtroom for their defense team.
    Limiting the number of attorneys available to each defendant in the courtroom also raises constitutional concerns with respect to defendants' right to counsel of their choice.  And even if each defense team only got one counsel present, and there was only one prosecutor, there would still be 35 people in a single courtroom.

[33]     Moreover, limiting public access during the trial or jury selection process would raise constitutional issues regarding Defendants' right to a public trial.  *See United States v. Negron-Sostre*, 790 F.3d 295, 301 (1st Cir. 2015).

10

voir dire process would need to be conducted over several days in order to break up potential jurors into smaller groups. This would greatly extend the total length of the already weeks-long trial.

Further, in his report to the bar on September 16, 2020, Chief Judge Saylor explained that potential jurors may be excused if they have underlying health conditions, household members with health conditions, a lack of childcare, or face economic hardship. Not only will this make the jury selection process more difficult, but will make it highly likely that certain demographics will be excluded from the jury pool—for example, women who serve as caretakers for children while schools are closed, minority populations who are disproportionately affected by comorbidities, or elderly jurors who have a justifiably greater fear of COVID-19. Thus, constitutional concerns may arise regarding whether the jurors will represent a fair cross- section of the community. *See Taylor v. Louisiana*, 419 U.S. 522, 527 (1975) ("[T]he Court has unambiguously declared that the American concept of the jury trial contemplates a jury drawn from a fair cross section of the community.").

Finally, present circumstances will make it exceedingly difficult for witnesses, as they will be required to travel to Massachusetts and may have various risk factors of their own to consider. Moreover, the costs and logistical issues associated with housing witnesses for weeks in advance of trial to allow them to quarantine and conducting in-person meetings to prepare them for examination should be avoided if possible, both for the government and for the defense.

The risks attendant in large gatherings, discussed in Section II above, are even more significant in a multi-defendant trial that is likely to last four or five weeks—and perhaps longer, depending on the length of any defense cases and whether any of the defendants choose to testify—in a closed courtroom.

## IV. CONTINUING THE TRIAL WILL ENABLE DEFENSE COUNSEL AND THE GOVERNMENT TO PREPARE ADEQUATELY, CONSERVE RESOURCES, AND MAKE IT MORE LIKELY THAT THE TRIAL WILL PROCEED AS SCHEDULED.

It is impossible to know exactly what the state of the COVID-19 pandemic will be in the months to come. However, experts believe that the COVID-19 infection rate will continue to worsen especially with the new U.K. variant circulating in the United States.[34] The United States has reported several all-time highs of cases and deaths during the first month of this year, with each large total surpassed in a few days by a new high.[35] Based on these trends, if the trial is not continued now, it is increasingly possible that new restrictions, possibly in connection with the more contagious U.K. strain now circulating domestically, will force the Group 2 Trial to be delayed at the last minute. In the interim, defendants and the government would have continued to expend substantial resources attempting to prepare, and re-preparing, for an event that may not happen as planned. Such costs are heightened during the last 75 days before a trial's scheduled start date. While no date can be absolutely certain, a trial date after the Group 1 Trial in September 2021 would provide a more certain timeline and give all parties the ability to plan and to avoid the expensive inefficiencies associated with repeatedly attempting to prepare for the same event. The interests of justice are not served by continuing to plan for an April trial that simply cannot take place.

The timeline of a Fall 2021 trial is in accordance with expert views on the abating of the pandemic. In a November 19, 2020 interview, the Director of the National Institute of Allergy

---

[34] *See* Steve Gorman, *Fauci sees U.S. gaining control over pandemic by next autumn*, Reuters, Dec. 30, 2020, https://www.reuters.com/article/us-health-coronavirus-usa/fauci-sees-u-s-gaining-control-over-pandemic-by-next-autumn-idUSKBN2942D3; *see also* Robert Hecht & Shan Soe-Lin, *What can we expect from the COVID-19 pandemic in 2021?*, Boston Globe, Jan. 19, 2021, https://www.bostonglobe.com/2021/01/19/opinion/what-can-we-expect-covid-19-pandemic-2021/.
[35] *See* CDC, Coronavirus Disease 2019 (COVID-19), Trends in Number of COVID-19 Cases and Death in the US Reported to CDC, by State/Territory, https://covid.cdc.gov/covid-data-tracker/#trends_dailytrendscases.

and Infectious Diseases, Dr. Anthony Fauci, stated: "I think we're going to have some degree of public health measures together with the vaccine for a considerable period of time. But we'll start approaching normal—if the overwhelming majority of people take the vaccine—as we get into the third or fourth quarter [of 2021]."[36] Thus, it is reasonable to assume that the parties (and witnesses) will be able to be fully vaccinated by the summer, thus allowing one or two months for counsel to meet with witnesses and prepare for a September trial. The Group 1 Trial Defendants raised this issue to the Court in their motion to continue their trial, offering the Court a potential trial date in June 2021 or September 2021. (Dkt. No. 1634.) Presumably, the Court agreed with the Group 1 Trial Defendants and the government that a trial and related preparation could not safely occur prior to September 2021. (*See* Dkt. No. 1679.) The Moving Defendants see no reason to depart from that logic when considering when their trial can safely occur.

The Moving Defendants are mindful of the fact that the Court's and the Government's schedule is challenging in the fall of 2021 due to the Group 1 Trial in this case in September 2021 and another trial related to this case in November 2021. The Moving Defendants share with the Court a desire and a willingness to try this case as soon as is reasonably practical and safely possible. However, the Moving Defendants respectfully submit, as a practical matter, that the earliest, most realistic such date is the fall of 2021. A firm trial date for some time after the Group 1 Trial in September 2021 will permit both the Moving Defendants and the government to set a final trial date once and for all. By that time, the majority of COVID-19 concerns should have abated and all trial participants and potential jurors are likely to have been vaccinated. This will avoid the significant and unnecessary expense to both the Moving Defendants and the government (*i.e.*, the taxpayer) of intense preparation efforts for a major case that ends up being

---

[36]    *See* Elisabeth Rosenthal, *When Will We Throw Our Masks Away? I asked Dr. Fauci*, N.Y. Times, Nov. 19, 2020, https://www.nytimes.com/2020/11/19/opinion/sunday/anthony-fauci-covid-interview.html.

continued. A trial date in the fall of 2021 will also permit attorneys who are at high risk for COVID-19 to fully participate in the preparation of their clients' case, which is difficult under current circumstances. Given that we are in the middle of a once-in-a-century global pandemic that has claimed over 400,000 American lives, a continuance of less than one year from the original trial date is objectively reasonable.

WHEREFORE, the Moving Defendants, request that this Court continue the Group 2 Trial to a date and time convenient to the court, after the Group 1 Trial in September 2021, and revise the corresponding pretrial order deadlines to comport with the new trial date.

## RULE 7.1 CERTIFICATION

Undersigned counsel Cory S. Flashner certifies that, on January 25, 2021, he conferred with counsel for the government. The government indicated they intend to respond to the motion.

Dated: January 25, 2021     Respectfully submitted,

Boston, Massachusetts

/s/ Michael K. Loucks
Michael K. Loucks (BBO #305520)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
michael.loucks@skadden.com

Jack P. DiCanio (pro hac vice)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
(650) 470-4500
jack.dicanio@skadden.com

*Counsel for Defendant*
*Marci Palatella*

/s/ Reuben Camper Cahn
Reuben Camper Cahn (pro hac vice)
Jennifer L. Keller (pro hac vice) Chase A.
Scolnick (pro hac vice)
KELLER/ANDERLE LLP
18300 Von Karman Avenue, Suite 930
Irvine, CA 92612
Tel: (949) 476-8700
rcahn@kelleranderle.com

*Counsel for I-Hsin "Joey" Chen*

/s/ Eóin P. Beirne
R. Robert Popeo (BBO # 403360)
Mark E. Robinson (BBO # 423080)
Eóin P. Beirne (BBO # 660885)
Cory S. Flashner (BBO # 629205)
MINTZ, LEVIN, COHN, FERRIS,
   GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
(617) 348-1605 (telephone) (617) 542-2241 (fax)
rpopeo@mintz.com
mrobinson@mintz.com
ebeirne@mintz.com
csflashner@mintz.com

*Counsel for Elisabeth Kimmel*

/s/ David S. Schumacher
David S. Schumacher (BBO #647917)
HOOPER, LUNDY & BOOKMAN, P.C.
470 Atlantic Avenue, Suite 1201
Boston, MA 02210
(617) 532-2700
(617) 345-3927 (fax)
dschumacher@health-law.com

Patric Hooper (pro hac vice)
HOOPER, LUNDY & BOOKMAN, P.C.
1875 Century Park East, Suite 1600
Los Angeles, California 90067-2517
(310) 551-8111
(310) 551-8181 (fax)
phooper@health-law.com

                Jordan Kearney (pro hac vice)
HOOPER, LUNDY & BOOKMAN, P.C.
575 Market Street, Suite 2300
San Francisco, CA 94105
(415) 875-8500
(415) 875-8519 (fax)
jkearney@health-law.com

*Counsel for Amy and Gregory Colburn*

## **CERTIFICATE OF SERVICE**

I, Michael K. Loucks, counsel for the Defendant, hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF, and paper copies will be sent to those indicated as non-registered participants on January 25, 2021.

/s/ Michael K. Loucks
Michael K. Loucks
