**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No.: 19-cr-10080-NMG |
| AMY COLBURN, et al., | |
| Defendants. | |

**AMY COLBURN, GREGORY COLBURN,**
**AND I-HSIN "JOEY" CHEN'S MOTION TO TRANSFER**

Defendants Amy Colburn, Gregory Colburn, and I-Hsin "Joey" Chen—the only remaining defendants solely charged with "test taking" admissions—respectfully move this Court to transfer their case to the Central District of California, the home state of the defendants, the state where the underlying events to this prosecution occurred, and the location of the majority of witnesses and defense counsel in this case.

## BACKGROUND

Eight parents remain to stand trial from the original *U.S. v. Sidoo* indictment, but the Court is faced with a difficult set of choices to bring this matter to resolution. The government intends to try all of the defendants in a single trial (*see* ECF No. 1717)—a prospect that is unworkable under the current circumstances, and, frankly, difficult to envision in 2021. The defendants object strenuously to a single trial, not just because a large, long trial continues to be unsafe, but also because it is unfair. However the case is charged, any reasonable person can see that the indictment encompasses two separate and distinct fact patterns: "test taking" and "admissions/side door" allegations. The "test taking" parents believe that their allegations are

simple and straightforward, requiring a relatively short trial. The "admissions/side door" defendants believe that they have a common set of allegations, primarily regarding USC. Both sets of parents understandably object to a trial featuring actions they did not take and co-defendants they have never met.

Recognizing this dynamic, the Court did its best initially to group the defendants fairly: an "admissions/side door" trial for the USC parents (Group 1), and a second trial for the "test taking"-only parents, Ms. Palatella (who has both allegations), and Ms. Kimmel (whose allegations include Georgetown University as well as USC) (Group 2). However, the COVID-19 pandemic required postponement of all trials, including this one, and, in the interim, the composition of both groups shrunk, due to plea bargains and a pardon. The Court has scheduled a status conference for June 15, 2021, to determine pre-trial deadlines and consider logistics and severance, if necessary. (ECF No. 1745).  To date, the Court has not been presented with a proposal that achieves the shared goal of holding fair trials under safe conditions for the remaining defendants as soon as practicable.

We can untie this Gordian knot. The Colburns and Mr. Chen respectfully request that the Court transfer the proceedings against them  to California. This is the forum where the defendants and the key witnesses live and where the underlying events in this indictment occurred. The California trial would be a straightforward and shorter[1] affair, involving the remaining parents who are solely charged with "testing" allegations. Excising the California group from the remaining defendants leaves five parents in Boston—a more manageable number that could be tried in a single proceeding as soon as it is safe to do so. Importantly, the "Boston"

---

[1] Though this straightforward proceeding would be lengthened by Mr. Chen's use of a Mandarin interpreter, a trial limited to testing allegations would avoid the need for interpretation of the far more extensive and time-consuming "side door" evidence.

trial would include all of the remaining parents with "admissions/side door" allegations, and, thus, those allegations would only be tried once.[2] Instead of two long trials, there would be one long trial and one much shorter trial involving the "testing" parents. The Colburns and Mr. Chen submit that this proposal addresses the concerns of all parties and will produce fair trials in the relatively near future.

Transfer motions are subject to a familiar balancing test. While the Colburns and Mr. Chen believe that the various factors point clearly in favor of transfer, the ongoing pandemic plainly presents unprecedented circumstances that call for "out of the box" thinking. Transferring the Colburns and Mr. Chen to California solves all of the logistical problems currently facing the Court. Therefore, the Colburns and Mr. Chen request that the Court transfer their case to the Central District of California.[3]

## ARGUMENT

"Upon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim P. 21(b); *see also United States v. Acherman*, 140 F. Supp. 3d 113, 114 (D. Mass. 2015) (Sorokin, J.).

While the defendant bears the burden of satisfying the standards outlined in the rule, "[n]othing in Rule 21(b) or in the cases interpreting it place on the defendant seeking a change of venue the burden of establishing truly compelling circumstances for such a change. It is enough if, all relevant things considered, the case would be better off transferred to another district."

---

[2] Ms. Palatella, and her "testing" allegations remain in the larger group, but those allegations would not substantially complicate the Boston trial.

[3] The Northern District of California would also be an acceptable location for trial, although, for the reasons discussed herein, venue is more appropriate in the Central District of California.

*Matter of Balsimo*, 68 F.3d 185, 187 (7th Cir. 1995) (Posner, C.J.); *United States v. Coffee*, 113 F.Supp.2d 751, 753 (E.D. Pa. 2000); *2 Federal Practice & Procedure* § 344 at Supp. 88. Rule 21(b) is "liberally constructed . . . so as to minimize inconvenience to a defendant." *United States v. Benjamin*, 623 F.Supp. 1204, 1211 (D.D.C. 1985). The Court enjoys broad discretion to transfer a criminal prosecution to a more convenient venue, *U.S. v. Muratoski*, 413 F. Supp. 2d 8, 9-10 (D.N.H. 2005), and "[a]lthough the government ordinarily enjoys broad limits to decide where to bring a conspiracy charge, the rules of criminal procedure require that the Court independently assess defendants' contention that [another forum] is the most 'convenient' venue." *United States v. Campestrini*, 993 F. Supp. 2d 69, 71 (D.P.R. 2014).

Courts apply a multi-factored balancing test to adjudicate a motion to transfer. *See Platt v. Minn. Mining & Mfg. Co.*, 376 U.S. 240, 243-44 (1964). The factors include:

> (1) the location of the defendant; (2) the location of possible witnesses; (3) the location of events likely to be in issue; (4) the location of documents and records likely to be involved; (5) the disruption of defendant's business if the case is not transferred; (6) the expense to the parties; (7) the location of counsel; (8) the relative accessibility of the place of trial; (9) the docket condition of each district or division involved; and (10) any other special considerations relevant to transfer.

*Id.* "It is incumbent on the court in such a case to strike a balance and decide which factors seem to be of greatest importance in that case." *Muratoski,* 413 F.Supp.2d at 10 (quoting 2 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 344 at 275).

However the Court balances these factors, holding the trial in California, rather than Boston, is clearly more convenient for the parties and in the interests of justice.

### 1.    Location of the Defendants

The first factor is the location of the defendants. Ordinarily, defendants should be tried in the district where they reside. *United States v. Johnson*, 323 U.S. 273, 275 (1944). Recognizing this rule, one circuit court expressed a sentiment that remains true more than 60 years later:

> Recognizing the unfairness and hardship to which trial in an environment alien to the accused exposes him, and the important policies underlying the venue provisions of the Constitution and Bill of Rights, the Supreme Court has declared that venue statutes should, whenever possible, be construed so to permit trial at the residence of the defendant.

*United States v. Cashin*, 281 F.2d 669, 675 (2d Cir. 1960); *cf Muratoski*, 413 F. Supp.2d at 11.

As another court has aptly observed:

> The United States is ubiquitous. The  . . . Department of Justice [is], or should be, "at home," not only in Washington, D.C., but also in Fresno or any other place in California or elsewhere in which a federal court sits. These eight defendants are only "at home" in California . . . In any federal district, the government lawyers have a built-in office, complete with local logistical support from parallel local staffs of the U.S. Attorney, IRS and the FBI.

*Benjamin*, 623 F.Supp. at 1212.

The Colburns live in Palo Alto, CA. Mr. Chen lives in Newport Beach, CA. Clearly, a trial in the Central District of California, rather than Boston, is more convenient for all three defendants. The first factor cuts strongly in the defendants' favor.

### 2.    Location of Witnesses

Many of the witnesses related to the Colburns and Mr. Chen reside in California. While the government has not yet produced a witness list, the underlying events related to "testing allegations" are straightforward and the universe of witnesses is relatively small:

- **Rick Singer** is certain to be the government's "star witness." A cooperating witness and the college counselor at the center of the events underlying the indictment, Mr. Singer is a resident of Newport Beach, CA. *See* Fourth Superseding Indictment, ¶ 30.[4] Similarly, Mr. Singer's college consulting business as well as his nonprofit organization were based in Newport Beach. *Id.* at ¶¶ 19-20;

---

[4] The indictment refers to Mr. Singer as a resident, "variously" of Sacramento and Newport Beach, but a recent Sacramento newspaper article refers to Mr. Singer as a *former* resident of Sacramento and a current resident of Newport Beach. *See* https://www.sacbee.com/news/local/article227458949.html

- **Igor Dvorskiy**, the ACT and SAT test administrator for the tests at issue in this matter, and another cooperating witness in this matter, resides in Sherman Oaks, CA. *Id.* at ¶ 32;

- **Mikaela Sanford**, a former employee of Singer's, and another cooperating witness for the government, lives in Folsom, CA;

- **Steve Masera**, another former employee of Singer's, and another cooperating witness for the government, lives in Folsom, CA;

- **Bruce Isackson**, a cooperating witness for the government, lives in Hillsborough, CA;

- **Mark Riddell**, the test proctor, and yet another cooperating witness for the government, is a resident of Palmetto, FL. *Id.* at ¶ 31.

Defendants anticipate that one or more federal agents from Boston may testify, as well as, perhaps, witnesses from the College Board and/or Educational Testing Services, Inc.

The defendants intend to call a number of witnesses in their defense—in addition to their own potential testimony. Counsel for Mr. Chen and Ms. Colburn have prepared declarations identifying potential witnesses they may call at trial. Mr. Chen identifies 16 potential witnesses; 13 live in California and three live in Illinois. Ms. Colburn identifies 12 potential witnesses; all but one live in California.[5]

In short, ***the vast majority of witnesses in this matter reside in California***. It would be significantly more convenient for most of the participants in the Colburns/Chen trial to testify in California than Boston. The location of witnesses is an important factor for the Court to consider, and it weighs strongly in favor of the defendants. *See Acherman*, 140 F. Supp. 3d at 118 (allowing motion to transfer, in part, based on location of witnesses in separate jurisdiction); *Campestrini*, 993 F. Supp. 2d at 72 (same); *Muratoski*, 413 F. Supp. 2d at 12. Moreover, these California-based witnesses should not have to travel a far distance to testify at the trial, when a

---

[5] The declarations are the subject of a separate motion for leave to proceed on an *ex parte* basis, to avoid premature disclosure of the Colburns' and Mr. Chen's witness lists—and trial strategy—to the government.

more convenient in-state location is readily available.

**3.      Location of Events at Issue**

The underlying events in this case occurred entirely in California. The government alleges that the Colburns and Mr. Chen hired Mr. Singer as a college counselor and agreed that he would arrange to improve their children's score on the SAT and ACT tests. *See* Fourth Superseding Indictment, at ¶¶ 97, 135. All of the conversations between Mr. Singer, the Colburns, and Mr. Chen occurred in Palo Alto and Newport Beach. Moreover, the applicable tests were administered in West Hollywood, CA on March 10, 2018 and April 14, 2018. *Id.* at ¶¶ 105-108, 137-138. Finally, the government alleges that the defendants transferred funds to Mr. Singer's charity (the Colburns) and business (Mr. Chen) in exchange for the higher score. These transfers were facilitated by the defendants and Mr. Singer in California using California bank accounts. *Id.* at ¶¶ 101-102, 139, 312-314, 323-325.

In short, *all* of the conduct concerning the alleged conspiracy occurred in California; *none* occurred in Boston. The *only* connections that exist between these defendants and Boston are (1) two phone calls placed from Mr. Singer to the defendants, which he could have made from anywhere but apparently placed while he was visiting Boston (presumably at the office of the FBI), and (2) Mr. Chen's child applied to one college in Boston. On these contrived calls, which occurred while Mr. Singer was cooperating with the government, the parties merely discussed the underlying events—they were not part of the alleged conspiracy. And the application to the college in Boston had nothing to do with the alleged score alteration, and, in any event, Mr. Chen's child did not enroll at the college.

Plainly, California has a stronger connection to these events than Boston. *See Acherman*, 140 F. Supp. 3d at 118 (underlying financial transactions occurred in separate jurisdiction);

*Muratoski*, 413 F.Supp. 2d at 12 (underlying events occurred out of state). As the court observed

in *Coffee*:

> At bottom, this factor ensures that the trial is held near where the
> allegedly criminal activity occurred, rather than in a district where
> venue has a more remote connection to the crime. While laying
> venue in this district is, to be sure, constitutional and in conformity
> with the venue statute, in truth the Coffees' actions in connection
> with the crimes alleged in this Indictment all took place in the
> Dayton, Ohio area.

*Coffee*, 113 F.Supp.2d 751 at 755-56. This factor points strongly in the defendants' direction.

**4.    Location of Documents and Records**

This factor is a wash. All of the documents in this case are maintained electronically. As

Judge Saris has noted, "the transportation of documents has virtually become irrelevant in the

digital age." *United States v. Hess*, 302 F.R.D. 283, 284 (D. Mass. 2014).

**5.    Disruption of Defendants' Businesses**

This factor is also neutral.

**6.    Expense to the Parties**

Litigating this matter in Boston poses a considerable expense to the defendants. If the

government's proposal is adopted, the Colburns and Mr. Chen face the prospect of a trial that

will likely last 6-8 weeks, 3,000 miles from home. The defendants will be required to fly from

California to Boston (likely multiple times) and stay in an expensive Boston-based hotels.

Moreover, any witnesses appearing on the defendants' behalf will also bear these expenses. And,

the Colburns and Mr. Chen will be forced to sit through several weeks of evidence related to the

"admissions/side door" allegations that do not involve them at all.

On the other hand, if the case is transferred to the Central District of California, Mr. Chen

will not incur any travel expenses, the Colburns will be able to stay with family in the area, the

expenses will be far less burdensome for the California-based witnesses, and the California trial will be much shorter, involving only the "testing" allegations. *See* Declaration of Amy Colburn (attached hereto as Exhibit ("Ex." A). Of course, the prosecutors may be required to travel to California to litigate the case—although it is certainly conceivable that California-based prosecutors can take over the case. Even if the current government lawyers follow the case, those costs will be borne not by them personally, but rather by the United States. And while public funds should, of course, be safeguarded, clearly a Boston-based trial will be more expensive for all concerned, and, as courts have observed,  government prosecutors and witnesses travel at no expense of their own. *See, e.g.*, *Campestrini*, 993 F.Supp. 2d at 71-72; *Coffee*, 113 F.Supp. 2d at 757 ("The United States of America has, for all practical purposes, unlimited financial resources to bring to bear. Unlike the Coffees, the Government can, and does, mint money."); *Benjamin*, 623 F.Supp. 1204 at 1216 (expense factor favors defendants). Indeed, the government's inconvenience is "a factor given little weight when other considerations of convenience suggest transfer." *United States v. Gruber*, 493 F.Supp. 234, 243 (S.D.N.Y. 1979); *see also Muratoski*, 413 F.Supp. 2d at 12.

In short, the expense factor also weighs in favor of the defendants.

**7.      Location of Counsel**

All of the lawyers representing Mr. Chen reside in the Central District of California. Two of the Colburns' lawyers reside in California—one in the Central District, another in the Northern District—and their third lawyer resides in Boston. Thus, five of the six lawyers representing the defendants reside in California. Of course, the government attorneys reside in Boston, and they may decide to continue to prosecute the case should it be transferred. However, as the *Coffee* court observed, "[i]n an era when lawyers routinely practice and try cases all over

America, we give little weight to whatever inconvenience this particular Assistant United States Attorney may suffer for spending a few weeks in [another district]." *Coffee* at 758. The location of counsel factor favors the defendants. *See Acherman*, 140 F.Supp. 3d at 118.

8.      **Relative Accessibility of the Place of Trial**

Defendants are unaware of generalized accessibility issues concerning either venue. Of course, the COVID-19 pandemic has caused substantial disruptions in both the Central District of California and the District of Massachusetts, and trial conditions appear to be equally difficult in both jurisdictions. This factor is neutral.

9.      **Docket Condition in the Districts**

Apart from the ramifications of COVID-19 on the courts' dockets—discussed below— the criminal docket in the Central District of California appears to be less congested than the District of Massachusetts. According to the most recent Federal Judicial Caseload Statistics report, the condition of both dockets relating to criminal matters is as follows:

|           | Criminal cases filed in 2020 | Change from 2019 | Criminal Cases pending in 2020 | Change from 2019 |
|-----------|------------------------------|------------------|--------------------------------|------------------|
| D. Mass.  | 468                          | -8.2%            | 648                            | 5.5%             |
| C.D.CA    | 1,043                        | -15.4%           | 2,447                          | -0.2%            |

Thus, the percentage of new criminal cases decreased last year by a higher percentage in the Central District of California relative to the District of Massachusetts, and its criminal caseload decreased in 2020, while the caseload in this District increased.[6]

---

[6] *See* U.S. District Courts- Criminal Defendants Commenced, Terminated and Pending (Including Transfers), During the 12-Month Periods Ending March 31, 2019 and 2020; available at https://www.uscourts.gov/statistics/table/d-cases/federal-judicial-caseload-statistics/2020/03/31. The Central District of California is, of course, a much larger jurisdiction than the District of Massachusetts. There are 30 judges in C.D.CA vs. 14 in D. Mass. (including senior judges)

That said, the COVID-19 pandemic has wreaked havoc on the dockets in both jurisdictions. Currently, only single-defendant criminal trials are being held in this District, and criminal jury trials only began in the Central District of California on May 10th.[7] Undersigned counsel is unaware when multi-defendant trials will resume in either district, although, as discussed below, hopefully this will occur in the near future.

All told, Defendants suggest that the docket condition factor weighs slightly in favor of transferring this matter.

**10.   <u>Special Conditions</u>**

Several special considerations apply: the COVID-19 pandemic, Mr. Chen's need for Mandarin language interpretation, the unavailability of Mr. Chen's attorneys during the currently-scheduled trial, due to previously scheduled trial in California, and considerations related to the Colburns' family.

a.   <u>The COVID-19 Pandemic</u>

Obviously the U.S. has made significant strides to reduce the transmission of COVID-19 in recent months. Comparing California and Massachusetts, California currently has the lowest rate of COVID cases in the nation—a rate of 10.2 cases per 100,000 residents over the last seven days.[8] The Massachusetts rate has improved, but it is still much higher than California: 44 cases per 100,000 residents over the last seven days. Regarding rates of vaccination, both Massachusetts and California score highly, with Massachusetts holding an advantage: 65% of the population in Massachusetts receiving at least one dose of the vaccine vs. 55.6% in California.[9]

---

[7] *See* General Order 21-07, Central District of California, April 15, 2021, available at https://www.cacd.uscourts.gov/sites/default/files/general-orders/GO%2021-07.pdf

[8] *See* https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (accessed May 26, 2021).

[9] *See* https://covid.cdc.gov/covid-data-tracker/#vaccinations (accessed May 26, 2021).

If these trends continue, it appears that California may be able to hold multi-defendant jury trials in California at an earlier date than Massachusetts.

b.   Mr. Chen's Need for Mandarin Language Interpretation

Mr. Chen's primary language is Mandarin Chinese.  He has limited English language proficiency, meaning he will need Mandarin language interpretation of all of the proceedings. Under the Court Interpreter's Act of 1978, designed to accommodate individuals with limited English proficiency and to ensure that they could fully "understand and participate in their own defense," a certified interpreter must be utilized in proceedings instituted by the United States when a party "speaks only or primarily a language other than the English language ... [thus] inhibit[ing] such party's comprehension of the proceedings or communication with counsel or the presiding judicial officer[.]"  28 U.S.C. § 1827(d)(1).  *See United States v. Murguia-Rodriguez*, 815 F.3d 566, 568–69 (9th Cir. 2016).  The use of certified court interpreters will be essential to Mr. Chen's ability to participate in his own defense and understand the nature of the proceedings against him.    The use of such interpreters, however, will require at least two additional people be present in the court room to fill this role.  *See* Guide to Judiciary Policy Vol. 5, §530.30 (Proceedings Typically Warranting Multiple Interpreters).  It will also substantially lengthen and complicate any trial. *See* Declaration of Reuben Camper Cahn (Ex. A).

By grouping Mr. Chen and the Colburns together, the Court will conserve judicial resources and streamline trial.   There will be no need for the interpreters to interpret evidence and testimony relating only to the defendants who have "admissions/side door" allegations against them.  The five defendants with "admissions/side door" allegations against them will not face the burdens of a trial substantially lengthened by Mr. Chen's need to have the entirety of the proceedings translated for him.

      c.      <u>Unavailability of Mr. Chen's Counsel</u>

Mr. Chen's trial attorneys, Ms. Keller and Mr. Cahn, are co-lead counsel in a trial in California scheduled to last from August 2021 through October 2021.  They are therefore unavailable for the trial date this court has set for all eight defendants in this matter in Boston. The conflicting matter was set for trial in the fall of 2020 and is approaching a statutory deadline by which it must be brought to trial.  Transferring Mr. Chen and the Colburns will allow their trial to be scheduled so it does not conflict with counsels' other trial.

      d.      <u>Colburn Family Medical Concern</u>

Finally, an additional special consideration for the Court to consider involves a medical condition involving a member of the Colburn family. Information concerning this condition appears in Ms. Colburn's declaration.[10]

In short, special considerations weigh in favor of transferring this matter.

\* \* \* \* \*

Analyzing all of the *Platt* factors together, seven factors weigh in favor of transferring this matter (defendants' residence, location of witnesses, location of underlying events, location of counsel, expenses, condition of dockets, and special conditions) and three are neutral (location of documents, accessibility to court, and disruption of defendants' business). No factors weigh in favor of keeping the case in Boston. While no single factor is dispositive, and the Court has to strike a balance to meet the particular needs of the case, however these factors are weighed, the balance tips strongly towards transfer. Given the current circumstances, this case belongs in California.

Defendants are aware that in other multi-defendant indictments, where some, but not all,

---

[10] The Colburns and Mr. Chen are submitting a motion to file this declaration *ex parte* and under seal, in order to avoid disclosure of sensitive medical information concerning a member of their family.

defendants seek transfer, concerns have been raised about transfer operating as a "back door" to severance. *See, e.g.*, *U.S. v. Noetzel*, 124 F.R.D. 518, 520-21 (D. Mass. 1989) (Ponsor, J.). However, in those cases, only one trial was scheduled in the pre-existing jurisdiction, and courts were concerned about the burden and inefficiencies of multiple trials. *Id.* Here, due to the large number of parents indicted, the Court has already arranged the parents into two groups. As the other defendants have indicated, an eight-defendant criminal trial, unwieldy in the best of times, is impossible to envision under current conditions. It is a virtual certainty that the remaining parents must be grouped into two trials. Under the instant proposal, there would still be two groups—the groups would simply be more logical and efficient. Thus, while the defendants continue to reserve their rights concerning severance, as a practical matter, these concerns are not present for the purposes of this Motion. Moreover, there is precedent in this jurisdiction for transferring some, but not all, defendants in a criminal indictment to another jurisdiction. *See Acherman*, 140 F. Supp. 3d at 114.

## CONCLUSION

All parties want to bring this matter to resolution as soon as possible. Respectfully, the proposal discussed herein provides the Court with the best opportunity to achieve this goal. For the above-stated reasons, the Colburns and Mr. Chen respectfully request that the Court allow the instant Motion and transfer their case to the Central District of California.

Dated: May 26, 2021

Respectfully Submitted


*David S. Schumacher*
David S. Schumacher
Patric Hooper (*pro hac vice*)
Jordan Kearney (*pro hac vice*)
HOOPER, LUNDY & BOOKMAN, P.C.
470 Atlantic Avenue, Suite 1201
Boston, Massachusetts 02210
(617) 532-2700
dschumacher@health-law.com

   *Counsel for AMY COLBURN and*
   *GREGORY COLBURN*

*/s/ Reuben Camper Cahn*
Reuben Camper Cahn (*pro hac vice*)
KELLER/ANDERLE LLP
18300 Von Karman Avenue, Suite 930
Irvine, California 92612
Tel. (49) 476-8700
rcahn@kelleranderle.com

   *Counsel for I-Hsin "Joey" Chen*


## LOCAL RULE 7.1 CERTIFICATION

I, David S. Schumacher, hereby certify that, on May 24, 2021, I conferred with counsel for the government regarding this Motion, and the parties were unable to resolve the underlying dispute.


   */s/ David S. Schumacher*
   David S. Schumacher, BBO #647917

## <u>CERTIFICATE OF SERVICE</u>

In accordance with Local Rule 5.2(b), I, David S. Schumacher, hereby certify that on May 26, 2021 this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ David S. Schumacher*

David S. Schumacher